# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **09-00389-jw**
Adversary Proceeding Number: **09-80094-jw**

### ORDER

The relief set forth on the following pages, for a total of 7 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**04/02/2010**



Entered: 04/02/2010

*John E Waites*

Chief US Bankruptcy Court Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>DAUFUSKIE ISLAND PROPERTIES, LLC,<br><br>                                                    Debtor. | C/A No. 09-00389-JW<br><br>Adv. Pro. No. 09-80094-JW<br><br>Chapter 11 |
| The Melrose Club, Inc.,<br><br>                                                    Plaintiff,<br><br>v.<br><br>Robert C. Onorato, in his capacity as Chapter 11 Trustee for the Estate of Daufuskie Island Properties, LLC; Stewart Kittredge Collins and/or Susan Charles Collins, Trustees of the Collins Family Trust Dated May 26, 1989; William R. Dixon, Jr. and Gayle Bulls Dixon; AFG, LLC; Carolina Shores, LLC; Beach First National Bancshares, Inc. d/b/a Beach First National Bank; Beach Cottages II, LLC; Pensco Trust Company, Inc.; The Beach Cottages, LLC; The Greenery, Inc.; Coastal Connections, Inc.; Beach Cottages III, LLC; Easter Beach Villas, LLC; and Ocean Front Villas, LLC,<br><br>                                                    Defendants. | **ORDER** |
| The Melrose Club, Inc.,<br><br>                                                    Plaintiff,<br><br>v.<br><br>DAUFUSKIE ISLAND PROPERTIES, LLC; William R. Dixon, Jr.; Gayle Bulls Dixon; Stewart Kittredge Collins and/or Susan Charles Collins, Trustees of the Collins Family Trust Dated May 26, 1989,<br><br>                                                    Defendants,<br><br>of whom Stewart Kittredge Collins and/or Susan Charles Collins, Trustees of the Collins Family Trust Dated May 26, 1989, is<br><br>                                                    Third Party Plaintiff,<br><br>v.<br><br>William R. Dixon, Jr.,<br><br>                                                    Third Party Defendant. | |

This matter comes before the Court upon the Motion and Memorandum to Alter or Amend ("Motion") the Order and Judgment entered December 21, 2009 ("Summary Judgment Order"), filed by the Melrose Club, Inc. ("MCI"). Objections and responses to the Motion were filed by Beach First National Bancshares, Inc. ("Beach First"); AFG, LLC ("AFG"); Stewart Kittredge Collins and/or Susan Charles Collins, Trustees of the Collins Family Trust dated May 26, 1989 ("Collins Family Trust"); Carolina Shores, LLC ("Carolina Shores"); and Pensco Trust Company, Inc. ("Pensco").

In the Summary Judgment Order, the Court considered the motions for summary judgment filed by Carolina Shores, MCI, AFG, and Beach First. The Court granted partial summary judgment to Carolina Shores and denied partial summary judgment to MCI, finding that Debtor had not made an election under Section 5.1 of the Transfer Agreement and MCI's reconveyance right had not been triggered. The Court further granted partial summary judgment to MCI, finding that the reconveyance right of Section 5.1 is a covenant running with the title to the Debtor's property. The Court denied the motions for summary judgment as to the parties' remaining claims, which pertained to establishing priority of the interests between MCI and the other parties.[1]

### A. Applicable Law

The Fourth Circuit has recognized three grounds for granting a motion to alter or amend a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."

---

[1] By order entered January 7, 2010, the Court authorized the Trustee to sell substantially all assets of the Estate free and clear of the rights and interests of MCI under the Transfer Agreement and Memorandum of Agreement ("Sale Order") to Montauk Resorts, LLC ("Montauk"). Subsequently, the Court entered an order on February 11, 2010, approving a settlement between the Estate and MCI; however, at the hearing on the Motion, counsel for the parties indicated that the settlement is dependent upon the consummation of the sale to Montauk. At the time of the hearing on the Motion, counsel for the Trustee informed the Court that the proposed sale had not closed and was not expected to close in the immediate future, and alternative avenues for a sale were being explored.

2

Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).  Rule 59(e), Fed. R. Civ. P., "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2617 n.5 (2008) (internal citation omitted).  "Mere disagreement does not support a Rule 59(e) motion."  U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (internal citation omitted); see also Martin v. Lott, C/A No. 3:07-3782-JFA, slip op., 2010 WL 679005, at *1 (D.S.C. Feb. 23, 2010) (denying a motion to reconsider on the basis of a clear error of law, finding that the motion sought to "relitigate matters previously decided by the court and appear[ed] to be based largely on [the] displeasure with the court's prior ruling").

### B. MCI's Motion

In its Motion, MCI contends that an amendment of the Summary Judgment Order is necessary to correct a clear error of law and to prevent manifest injustice to MCI and its rights under Article 5 of the Transfer Agreement.  Specifically, MCI argues that the Court failed to properly construe the terms of Section 5.1, including the term "elect" and the written notice requirement, since the interpretation results in the reconveyance covenant being "worthless" to MCI.  MCI also asserts that the Summary Judgment Order improperly nullified its vested property rights, for which MCI has no other remedy since there is no support in the record for the Court's treatment of Article 14 as the exclusive means of redress.

#### a. Construction of Section 5.1

In the Summary Judgment Order, the Court concluded that a failure of Debtor to fund all operational deficits and the proposed sale to Montauk do not constitute elections not to perform under Section 5.1 of the Transfer Agreement.  Prior to the hearing, the parties had agreed that Section 5.1 contains no ambiguity.  Based upon its plain language, the Court found that Section 5.1 sets forth affirmative acts necessary to trigger the reconveyance right: first, Debtor must elect

3

not to perform, and second, Debtor must provide written notice to MCI of that election. The Court interpreted the term "elect" according to its plain and ordinary meaning, which requires a voluntary choice and a willing act on the part of Debtor. The Court also drew a distinction between the Transfer Agreement's use of "elect" and "fail" by referencing Section 16.1, which identifies a party as being in default of the agreement, including the requirement in Section 14 to fund operational deficits, if the party "<u>fails</u> or refuses to comply with the terms and conditions set forth . . . ." (Emphasis added).

The Court further found that such a construction of Section 5.1 would be reasonable under a number of scenarios. As one example, the Court noted that since the obligations were extensive and the costs uncertain at the time the parties entered into the Transfer Agreement, it would be logical for the purchaser to negotiate a right to withdraw from its obligations by making an election not to perform and returning the assets to their original status if the purchaser determined it could not meet such significant expenses. With respect to the proposed sale, the Court noted that Section 14.1.6 specifically allows for a sale of substantially all of the assets according to certain detailed requirements.

### b.  <u>MCI's Rights and Remedy</u>

In the Summary Judgment Order, the Court concluded that the reconveyance right in the Transfer Agreement is a covenant running with the land. While the Court found MCI's rights under Section 5.1 depend upon the triggering of the reconveyance right and that the right has not been triggered, the Court also determined that the Transfer Agreement provides MCI with a different remedy outside of Section 5.1 for any failure of Debtor to fund operational deficits. The Court reasoned that Section 14.1.4 of the Transfer Agreement also imposes a duty on Debtor to fund operational deficits, and pursuant to Sections 17.4 and 18.1, MCI has the right to "any

4

remedy available at law or in equity, including specific performance" in an arbitration proceeding.

### C. Analysis

After reviewing the Summary Judgment Order and the Motion and objections, and considering the arguments made at the hearing, the Court finds that no amendment is warranted and denies the Motion.

Initially, the Court finds that MCI has failed to demonstrate any clear error of law or that an amendment is necessary to prevent manifest injustice, and therefore, has failed to satisfy the standards necessary in order for the Court to alter or amend the Summary Judgment Order. Based on the arguments raised by MCI in its Motion and at the hearing, it appears that MCI is attempting to reassert the same issues concerning the construction and interpretation of Section 5.1. As properly noted by the objecting parties, MCI's mere disagreement with the Court's interpretation of Section 5.1 cannot support its Motion. The Summary Judgment Order contained a thorough analysis of the language of Section 5.1, including the meaning of "election," and found that the provision plainly sets forth the conditions necessary for the purchaser under the Transfer Agreement to trigger MCI's right to reconveyance.

The Court further agrees with the objecting parties that had the parties intended to trigger the reconveyance right for the mere failure of the purchaser to fund operational deficits, that language could have been incorporated. The Transfer Agreement's use of the term "fail" in Section 16.1 indicates that the parties intended a different meaning by using the term "elect" in Section 5.1. As the Court concluded in the Summary Judgment Order, the Transfer Agreement includes a separate, distinct provision from Section 5.1 that specifically considers a sale of the assets. Thus, the Court finds MCI has presented no convincing reason for the reconsideration of the Summary Judgment Order with respect to its interpretation of Section 5.1 or the conclusion

5

that Debtor had made no election prior to the Summary Judgment Order not to perform under the Transfer Agreement.

The Court also concludes that no reconsideration is warranted based on MCI's contention that the Summary Judgment Order improperly nullified its vested property rights. As the objecting parties pointed out, the Summary Judgment Order granted partial summary judgment to MCI, finding that MCI's reconveyance right in Section 5.1 is a covenant running with the land. While the Court recognized that the likelihood that Debtor would trigger MCI's rights under Section 5.1 at this time is remote, the Court did not nullify any rights of MCI under Section 5.1. Furthermore, the Court agrees with the objecting parties that consideration must be given to the entirety of the Transfer Agreement, which offers a separate, broader remedy to MCI for any failure of Debtor to fund operational deficits under Article 14.[2] Thus, the Court finds there is no merit to the argument that the Summary Judgment Order resulted in manifest injustice by denying a remedy to MCI.

Based on the foregoing analysis, the Motion is denied.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
April 2, 2010

---

[2] In its combined argument of this Motion and the Motion to Vacate the Sale Order, MCI argued that the Court's consideration of Article 5 in relation to Article 14, and to some degree, Article 3, was incorrect in that the provisions address the interests of different entities, with Article 5 addressing MCI's interest and Article 14 addressing the New Club members' interest. However, the plain language of the Transfer Agreement indicates that a material benefit to the Seller, or MCI, included the operation of the New Club, the maintenance of the assets, a limit on assessments, and the continuation of club memberships. Furthermore, it has been consistently represented to the Court that MCI's interests are founded upon the protections of the amenities and maintaining the value of the property.

As discussed many times by the parties and in the Court's orders, the remaining "additional obligation" under Section 5.1 is the funding of operational deficits. Section 14.1.4 sets forth a list of obligations on the Purchaser, one of which is to "fund and pay all operational deficits generated by Purchaser." This obligation is generally stated and not confined to the operation of the New Club, and thus, MCI is not left without a remedy for a failure to fund operational deficits. Regardless of whether all MCI members became members of the New Club or not, the language of the Transfer Agreement indicates that MCI's interest in the funding of operational deficits – whether that obligation arises from Article 14 or Article 5 – would be based upon the amenities and membership benefits described in Articles 14 and 3.